UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Christian Methodist Episcopal Church, The Atlantic Beach CME Mission Church and its Congregation, Crystal Black, Tonya Bratcher, Carl Bufford, Bernard Badie, Gladys Davis, Lakeisha Patricia Edwards, Claudia Johnson, Tara Johnson, Erica Lewis, Alice Lamar, Melvin Mathis, Darnell Price, Windy Price, Patricia Robinson, Robert Stanely, Denise Stanley, Lukisha Stanley, Emily Stanley, Martha Thompson, Timothy Wilson, James Wilson, Lilly Gause-Cox. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C/A No.:4:04-CV-22322-RBH |
| Plaintiffs, | ) ) | **O R D E R** **(Granting PARTIAL Summary Judgment)** |
| | ) | |
| Carolyn Montgomery, in her official capacity as City Manager and individually; Carla Taylor, in her official capacity as Planning Administrator and individually; and Town of Atlantic Beach, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs Christian Methodist Episcopal Church, Atlantic Beach CME Mission Church, and

members of the congregation initiated this action on September 23, 2004 alleging that the defendants,

Town of Atlantic Beach; its City Manager, Carolyn Montgomery; and Carla Taylor, the Planning

Administrator, violated their First Amendment rights to freely exercise their religion and the Religious

Land Use and Institutionalized Persons Act (RLUIPA)[1].  Both causes of action were alleged under 42

U.S.C. § 1983.  Defendants filed an Answer on October 18, 2004 and an Amended Answer on

November 5, 2004.

_____

[1] 42 U.S.C. § 2000cc

1

Defendants filed a Motion for Summary Judgment on October 21, 2005 and the plaintiffs filed a response to the motion on November 22, 2005. Defendants filed Objections to Plaintiffs' Use of Exhibits on November 28, 2005.[2] This Court granted the plaintiffs' motion to amend their Complaint, and an Amended Complaint was filed on December 22, 2005. The Amended Complaint named as parties plaintiff certain individuals in addition to the church, but plaintiff's counsel did not amend the substantive allegations of the complaint. Plaintiffs seek money damages but do not seek declaratory or injunctive relief.

Defendants withdrew their Motion for Summary Judgment with leave to re-file on January 24, 2006. On February 2, 2006, the defendants filed an Answer to the Amended Complaint. Defendants filed the Motion for Summary Judgment which is being ruled upon in this Order on April 17, 2006. The plaintiffs filed a response on May 22, 2006. On May 30, 2006, the defendants filed Objections to Plaintiffs' Use of Exhibits.[3] On September 21, 2006, the plaintiffs filed affidavits of Carl Buford, Claudia Johnson, Emily Stanley, Lukisha Stanley, and Judy Powell Stanton. On October 6, 2006, the defendants filed Continued Objections to Plaintiffs' Use of Affidavits.[4]

This Court heard oral arguments on the Defendants' Motion for Summary Judgment on

---

[2] Defendants objected to inclusion into evidence of the "affidavits" of Carl B. Buford, Claudia Johnson, Emily Stanley, Judy Powell Stanton, and Lukisa Stanley and to the following documents identified in the plaintiffs' memorandum: Ordinance Summons of Darnell Price, Planning Commission Agenda, and the "statement" of Vonetta M. Smith.

[3] Defendants object to the "affidavits" attached to the plaintiffs' response to the Motion for Summary Judgment (affidavits of Carl B. Buford, Claudia Johnson, Emily Stanley, Judy Powell Stanley, Lukisha Stanley, and Darnell Price). Defendants also object to the noise ordinance and traffic ticket identified in the church's memorandum.

[4] Defendants object to the "affidavits" of Buford, Johnson, Emily Stanley, Judy Powell Stanley, and Lukisha Stanley pursuant to Fed. R. Evid. 104(a) and contend that the affidavits were filed too late for the Court to consider in opposition to the motion for summary judgment.

December 22, 2006.

## Summary Judgment Standard

Defendant filed its motion for summary judgment pursuant to Rule 56, Fed. R. Civ.P. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56,Fed.R.Civ.P; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied upon must meet "the substantive evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## Facts

The undisputed evidence of record reflects that the Atlantic Beach CME Mission Church began holding religious services in the Town of Atlantic Beach on June 1, 2003 at the Evans Arena, located

3

at 31st Avenue South.  This property was owned by the mother of the Mayor and was zoned as Mixed

Use. (Depo. of Price, p. 20; Depo. of Taylor, p. 9; Depo. of Montgomery, pp. 15-16). The Church was

never notified by the Town that its location at the Evans Arena was in violation of the zoning

ordinance.[5]  The Church subsequently re-located to 502 30th Avenue South to a building owned by

Vonetta Nimocks and Eboni McClary (hereinafter "Nimocks", "McClary" or collectively,

"Landowners"), who resided outside South Carolina. (Depo. of Price, p. 23; Depo. of Taylor, p. 14;

Depo. of Montgomery, pp. 79-80). The Landowners did not enter into a lease with the Church for use

of the building but simply allowed the Church to use the building. (Depo. of Price, p. 23; Depo. of

Montgomery, p. 61). The property located at 502 30th Avenue South (hereinafter "the building") is

zoned as Mixed Use. (Depo. of Price, p. 114; Depo. of Montgomery, p. 27).

The Town's zoning ordinance, which was passed by the Town's Council in December of 2001,

provides for the location of religious institutions in Office/Professional/Institutional Districts. (Exhibit

1; Depo. of Montgomery, p. 29). However, religious institutions may also locate in an area zoned as

Mixed Use conditionally, if proper procedures are followed. (Exhibit 1, Depo. of Montgomery, p. 33-

35).  The Town's zoning ordinance provides that only the landowner can apply or request a change in

zoning through the Town's Council, not a tenant. (Depo. of Taylor, pp. 16, 24-25; Depo. of

Montgomery, pp. 30, 51).

Shortly after the Church began holding worship services at the new building at 502 30th Avenue

South, members of the congregation began making certain improvements to the property without a

building permit. (Depo. of Buford, pp. 10-11). These improvements included constructing a pantry in

the kitchen, conducting electrical work, remodeling the bathrooms, replacing the floor in one of the

---

[5] The record does not indicate that the church was renovating the first building which it occupied.

4

bathrooms, performing plumbing work, installing interior and exterior doors, sealing a kitchen door with sheet rock, installing sheet rock, constructing a deck with stairs, installing hardwood floors and dropping the ceiling in the pastor's office. (Affidavit of Badie; Depo. of Price, pp. 27-28, 70-71; Depo. of Buford, p. 11-12 ).

The Town issued a stop work order on March 8, 2004 and required the Church to secure a permit. (Depo. of Taylor, p. 10-11; Exhibits 2, 3). The Church's pastor, Reverend Windy Price (hereinafter "Price"), submitted a building permit application on behalf of the Church. (Exhibit 4). Carla Taylor, then Planning Administrator, (hereinafter "Taylor"), notified Price by letter dated March 20, 2004 that additional information was needed to process the application. (Exhibit 5; Depo. of Taylor, pp. 11-12). According to Taylor, upon further review of the application, she realized the Church's requested use of the building was not in compliance with the Town's zoning ordinance. (Depo. of Taylor, p. 23). Specifically, zoning compliance was necessary before a building permit could be issued. (Depo. of Taylor, p. 12; Depo. of Montgomery, p. 43).

Price testified that she was not given an opportunity to address the Town's Planning Commission during its April 17, 2004 meeting. (Depo. of Price, pp. 80, 104). She was apparently not allowed to do so on the basis that, under its ordinances, the Town has no authority to re-zone property without a request from the owner. (Depo. of Taylor, p. 25).

Taylor and then Town Manager Carolyn Montgomery (hereinafter "Montgomery") notified the Landowners regarding their responsibility for compliance with the Town's ordinances. (Depo. of Montgomery, pp. 27, 30-31, 51). Taylor and Montgomery explained to the Landowners the proper procedures for petitioning the Town Council for the approval of the conditional use by an institution such as a church. (Depo. of Montgomery, pp. 31-34, 51; Depo. of Taylor, p. 19; Depo. of Price, p. 137-138). The landowners are not parties to the lawsuit, nor have the parties submitted affidavits or

depositions of the landowners.  The record contains an exhibit (docket #64-18) which is attached to the

plaintiff's memorandum, which is a letter to the landowners advising of the procedure and the penalties

for noncompliance.  Plaintiffs allege this was a threat to dissuade the landowners form applying for the

zoning change.  After the Town had notified the Landowners that they would be responsible for

payment of fines, the Landowners advised the Town that they had informed the Church that it could

no longer operate on the property. (Exhibit 6; Depo. of Montgomery pp. 26).  The letter, dated April

17, 2004, advised the Town of the following:

> Dear Ms. Taylor:  I have spoken to you and Ms. Montgomery regarding
> the property and the violations. As I have told you and Ms. Montgomery
> I have notified Mr. Price that he has to close the doors of the church
> **until we as landlords can go through the correct channels to be able
> to allow the church to operate.** I also understand that myself and my
> cousin (Eboni McClary) have to apply for a business license to rent and
> follow any zoning ordinances in Atlantic Beach. Also from this day
> forward any issues regarding this property please contact myself and/or
> Eboni McClary.          (Emphasis added)

In spite of the fact the landowners had apparently instructed the church not to use the property

for church services until they had applied for conditional use, the Church continued to hold services

at the 30th Avenue location. (Price Depo., p. 21). The town issued a stop work/occupancy form to the

church but apparently did not actually enforce it. (Montgomery depo., p. 54)

Montgomery asked a law enforcement officer to go to the Church, the purpose of which was

allegedly to verify for the Landowners that the Church still used the building for church services.

(Depo. of Montgomery, pp. 26, 31-32)  Price contends that church members were harassed by the

Town through police riding by the church and asking questions of church members and people

attending revivals and asking them what was happening in the building.  (Buford depo. p. 6). Carl

Buford, a church member who was assisting with repairs, stated that councilman John Skeeter told him

that he did not think Atlantic Beach needed a church.  (Id.  at 12).

6

To date, the Landowners have never followed through with the process to get their building in compliance with the Town's zoning ordinance. (Depo. of Taylor, pp. 15-16; Depo. of Montgomery, pp. 34, 43-44). Taylor testified:

> Q: I understand the law being broken. What was unlawful about the occupation?
>
> A. Where the church was situated was zoned for particular types of businesses and structures. The process of making the church in compliance with the current zoning of that area was a process that the landowners had at that point not followed through on. Therefore, the Church being there was in noncompliance with the land management ordinance because the procedure to change the zoning to accommodate the church's presence there had not be followed through.
>
> Q. Was it the church's unlawful act, or was that the owners' unlawful act?
>
> A. The landowners were to ensure that the structure on their property was in compliance with the land management ordnance.

(Depo. of Taylor pp. 15-16).

Although the Landowners never complied with the zoning ordinance, the Town never locked the doors of the building or prevented the Church's congregation from worshiping in the building. (Depo. of Price, p. 83). Price acknowledges that the Church has to comply with the Town's ordinance and permit system. However, she states, "who is man to dictate to God where he sets his house up. We didn't ask for that location. That's where God put us at and we're aware of the ordinance and everything." (Depo. of Price, pp. 82, 146). To date, the Church has continuously held services at the 30th Avenue location.

> Q: How often do you have services in your church?
> A: Every Sunday.
> Q: How many Sundays have you missed having services?
> A: We haven't missed a Sunday.
> Q: You have not missed a Sunday.
> A. No.

7

(Depo. of Price, p. 21).

Price further testified in her reconvened deposition on July 28, 2005:

Q. How many Sundays or scheduled services has your church missed based on the Town's actions?
A. We have not missed any services.
Q. So, as we sit here today, you have through no action of the Town—excuse me. The Town has not done anything to cause you to miss any service or scheduled religious function. Is that a true statement?
A. That is true.

(Depo. of Price, p. 108).

Taken in a light most favorable to them, the plaintiffs have presented evidence that the zoning ordinance was being enforced at the present location but not the former location which was allegedly owned by the mayor's mother; that there were instances of alleged harassment by officers acting at the direction of the defendants; and that the defendants interfered with the operation of the church.  The plaintiffs have also presented evidence of comments being made by town officials that they did not want a church in the area due to the fact that some bars in the area sell alcohol and churches are not allowed in close proximity to businesses which sell alcohol.  "In our first location, alcohol was sold in closed container because of the grocery store by us, and in the new location alcohol is sold in the open containers but there was no bar."  (Price Depo., p. 118).  Rev. Price also states that she believes that the biker's festival was to occur soon near the church's location and, since the town's ordinances restrict the sale of alcohol within close proximity of a church, the Town did not want the church to be located there. Price also states that an unidentified "person who worked for Town Hall" suggested that she cover up her sign during bike week.  (Price Depo. p. 119).  Additionally, Plaintiffs submitted an affidavit of a church member, Claudia Johnson, who stated that police officers came in during a church service and that she attended the planning commission meeting and heard defendant Montgomery make statements that the church was "a crooked place".

Price additionally contends that Montgomery showed a church member, Judy Stanley, a/k/a Stanton, a videotape of Price and another member of the church shoplifting in Lowe's, an allegation which Price denies.  (Price depo. p, 100).  Stanley also states that she stopped attending the CME church  because agents of the town suggested that she could not keep her job with the town if she continued to attend the church. (Stanley affidavit)

### Defendants' Objections to Plaintiffs' Affidavits

Defendants object to the affidavits filed by the plaintiffs on several grounds.  They contend that the affidavits were not properly notarized and that they were submitted in opposition to the defendants' first motion for summary judgment and were not re-dated but were simply re-filed in opposition to the second motion for summary judgment, with a notary certificate showing a later date.  Defendants object to the affidavit of Darnell Price on the basis that it is signed by Darnell Price but speaks "in the voice of" Rev. Windy Price and concerns events that occurred two years after the complaint in this action was filed  In addition, the defendants contend that the affidavits were filed after the deadline for filing a response to the second motion for summary judgment.

"It has been suggested that in applying Rule 56(e), a court should not be unnecessarily hyper-technical in making sure that all the nonsubstantive requirements of execution of the affidavit are satisfied.  It has also been suggested that the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party."  27A Fed. Proc. L.Ed. § 62.709, *citing Pfeil v. Rogers*, 757 F.2d 850 (7th Cir. 1985).

Except as indicated below, the Court has considered the affidavits submitted by the plaintiffs, as there is no evidence that the notaries public who signed the affidavits did not properly perform their functions.  In addition, the court considers the affidavits to be sufficiently timely under Fed. R. Civ. Pro. 56(c), which provides "the adverse party prior to the day of hearing may serve opposing

affidavits."[6]  However, the Court has not considered the affidavit of Darnell Price with attached noise ordinance and ticket, since the affidavit contains facts that appear not to be of his personal knowledge and concerns an incident which occurred two years after the lawsuit was initiated.

For the reasons that follow, plaintiffs' second cause of action is dismissed and plaintiffs' first cause of action is permitted to proceed.

**Religious Land Use and Institutionalized Persons Act**

**1.  Sufficiency of Pleadings**

Plaintiffs alleged two causes of action in their pleadings.  Both were based upon 42 U.S.C. § 1983, with the first cause of action being premised on an alleged violation of the First Amendment right to free exercise of religion, and the second cause of action being based upon an alleged violation of RLUIPA, 42 U.S.C. § 2000cc.  As noted above, the plaintiffs do not seek declaratory or injunctive relief but only seek money damages.  For the following reasons, the second cause of action is dismissed.

For the first time in their memorandum in opposition to the motion for summary judgment and at the hearing on the motion for summary judgment, counsel for the plaintiffs took the position that his second cause of action is no longer a § 1983 claim but is rather an independent claim under RLUIPA.  He has not filed a motion to amend his pleadings, nor have the defendants indicated a consent to such an amendment. Clearly, he pled the second cause of action as a § 1983 claim.  RLUIPA allows for remedial relief for a violation.  "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  "A plaintiff may not use Section 1983 where the underlying statute has its own

_____

[6] The Court recognizes that it is customary practice in this district for parties opposing a motion for summary judgment to file affidavits at the same time as their response to the motion for summary judgment under Local Rule 7.06 and strongly encourages such a practice.  However, Rule 56(c) is clear as to the time allowed for filing opposing affidavits.

comprehensive enforcement scheme." *Chase v. City of Portsmouth*, 2005 WL 3079065 at *5 (E.D. Va. 2005) (unpublished) (dismissing § 1983 claim asserting violation of RLUIPA), *citing City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005). Therefore, the plaintiffs' second cause of action is DISMISSED, since a § 1983 action does not lie under RLUIPA.

While the plaintiffs seek only money damages as relief, and not injunctive or declaratory relief regarding the zoning ordinance, in their memorandum of law they indirectly challenge the ordinance's validity as a basis for an award of money damages. Therefore the Court believes it must address the validity of the ordinance itself as discussed below.

## 2. Ripeness

Even if the plaintiffs had properly pled RLUIPA as an independent cause of action, any claim that the ordinance violates RLUIPA fails under the facts presented in the case at bar on the basis of ripeness.[7] "Both ripeness and standing are doctrines relating to the justiciability of the congregations' claims, which encompasses both constitutional and prudential concerns. . . The constitutional aspect of justiciability focuses on whether the Article III requirements of actual 'case or controversy' are met, while prudential aspect asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time." *Midrash Sephardi, Inc v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004).

In deciding whether a claim is ripe, courts generally consider: 1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration. *Abbott Lab v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *abrogated on other grounds*,

---

[7] It is uncertain and questionable whether "individual damage actions" can even be maintained under RLUIPA. *See Madison v. Riter*, Nos. 06-6266, 06-6296, 2006 WL 3823181 (4th Cir. December 29, 2006).

*Califano v. Sanders*, 430 U.S. 99 (1977). The Landowners have not even applied for a change in zoning on behalf of the Church; nor has such an application been denied. Therefore, the plaintiffs do not raise a legal issue which the Court can decide in the abstract without further factual developments. *See Midrash Sephardi* at 1224-25; *State of Ohio ex rel. Scadden v. State of Ohio*, 2002 WL 452472, *appeal not allowed*, 772 N.E.2d 1204 (Ohio App. 10 Dist. 2002) ("Our determination of such would be premature, given that appellants may file for a certificate of zoning compliance, which could still hypothetically be granted. . . . Thus, given there has been no determination by any agency or tribunal that the zoning resolution prohibits the particular use in question, we cannot say whether any hypothetical prohibition would infringe on appellants' religious practices in violation of RLUIPA or any constitutional provisions.")

This Court finds that the issues raised by the plaintiffs as to RLUIPA are of questionable ripeness for adjudication.[8] The owners of the property have not even attempted to obtain the zoning variance so that the property can be used by the church. However, plaintiffs argue in essence that the matter is ripe in that the ordinance fails to allow tenants standing to apply for the zoning change. With regard to this sole issue, the case may be ripe; however, with regard to an actual denial by the town, it is not ripe because the process has not even been followed by the landowners yet. It is entirely

---

[8] Defendants also contend that the plaintiffs lack standing, since they allegedly had no legal interest in the property. "The term 'land use regulation' means a zoning . . . law. . . that limits or restricts a claimant's use or development of land . . . if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest."42 U.S.C. § 2000cc(5). Defendants contend that the April 17, 2004 letter from one of the owners indicating that Price no longer has permission to use the property for a church establishes that the church does not have standing. Plaintiff asserts that this letter was only sent after the town threatened to assess fines against the owners and that this is evidence of the town imposing a burden on religion. The Court believes that the issue of standing is not completely clear and declines to grant summary judgment to the defendants on this basis in light of its ruling that the case is not ripe for adjudication.

speculative at this time whether such an application would be granted or denied. Therefore, the defendants' motion for summary judgment is granted as to the RLUIPA cause of action on the basis that the case is not ripe for adjudication.

### 3. Substantial Burden

Third, the plaintiffs have failed to prove a *prima facie* case of a substantial burden on religion under RLUIPA. RLUIPA provides that "no government shall impose or implement a land use regulation in a manner that imposes a *substantial burden* on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a *compelling governmental interest*; and (B) is the *least restrictive means* of furthering that compelling governmental interest." Subsection (b) of the statute provides that "no government shall impose or implement a land use regulation that (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." (Emphasis added). The Act further provides that "no government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(2).

"The Act does not define the term 'substantial burden' because it is not the intent of this Act to create a new standard for the definition of 'substantial burden' on religious exercise. Instead, that term as used in the Act should be interpreted by reference to Supreme Court jurisprudence. . . . The term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden on religious exercise." *Vision Church, United Methodist v. Village of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006)(holding that village zoning ordinance which imposed restrictions on construction of churches, including size and capacity limitations, and which required a special use permit for construction of new churches, did not

13

substantially burden religion), *citing* 146 Cong. Rec. S7774-01 (daily ed. July 27, 2000 ) (joint statement of Senators Hatch and Kennedy)

In *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003), the Seventh Circuit defined "substantial burden" in the zoning context as "one that necessarily bears direct, primary, and fundamental responsibility rendering religious exercise-including the use of real property for the purpose thereof within the regulated jurisdiction generally-effectively impracticable" and held that no substantial burden was present where the zoning regulations presented only "ordinary difficulties" that are present when any entity attempts to find a location for its business or venture. *Id*. at 761. *See also*, *Sisters of St. Francis Health Services, Inc. v. Morgan County, Indiana*, 397 F. Supp. 1032 (S.D. Ind. 2005) ("Interpretation of the substantial burden provision to prohibit every regulation limiting any use of property for religious purposes would render the word 'substantial' meaningless. . . Also, St. Francis' argument would effectively exempt any religious-based health care facility from otherwise valid certificate of need laws, which would seem to be a sweeping and unwarranted exemption. RLUIPA does not grant churches a blanket exemption from zoning laws.") *Id*. at 1051.

The Fourth Circuit has recently defined the term "substantial burden" under the provisions of RLUIPA dealing with institutionalized persons. In the context of dealing with prisoners, the Court found that a substantial burden on religion occurs "when a state or local government through act or omission 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee, et al*, No. 04-7797, 2006 WL 3823127 at *6 (4th Cir. December 29, 2006). The Court further explained that RLUIPA imposes a "more searching standard of review of free exercise burdens than the standard used in parallel constitutional claims: strict scrutiny instead of reasonableness." *Lovelace*, 2006 WL 3823127, at *5.

While RLUIPA uses the higher standard of "strict scrutiny" rather than the "reasonableness"

standard of First Amendment free exercise claims, it is helpful to look at case law dealing with the free

exercise clause.  However, RLUIPA is focused on land use while the Free Exercise clause focuses on

beliefs and practice.  The Free Exercise Clause of the First Amendment provides that "Congress shall

make no law . . . prohibiting the free exercise" of religion. U.S. Const., Amendment I. A law that is

neutral and generally applicable does not violate the Free Exercise Clause and need not be justified by

a compelling governmental interest, even if it incidentally affects religious practice. *Employment Div.,*

*Dep't of Human Resources of Oregon. v. Smith*, 494 U.S. 872, 878-79(1990); *American Life League,*

*Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995). "A law is neutral if its object is something other than

the infringement or restriction of religious practices." *Grace United Methodist Church v. City of*

*Cheyenne, et al.*, 451 F.3d 643, 649-650 (10th Cir. 2006) (upholding zoning ordinance as a neutral

policy of general applicability and, thus, not violative of First Amendment rights of church day care

facility).

An unpublished Fourth Circuit opinion is analogous to the instant case as it pertains to zoning,

although it was decided under the First Amendment before the passage of RLUIPA.  In *Christ College,*

*Inc., et al. v. Board of Supervisors, Fairfax Co., et al.*, 944 F.2d 901,1991 WL 179102 (4th Cir. 1991)

(unpublished), Christ College alleged that the Board of Supervisors of Fairfax County violated the

College's free exercise of religion as a result of the Board's denial of the College's application for a

special exception to the County's zoning laws to build and operate a schoolhouse in an area zoned

residential. The County permitted a school to operate on a property zoned for commercial or industrial

use as a matter of right; however, it required a school to obtain a special exception to the zoning laws

before it located in a area zoned for residential use.

The Fourth Circuit held that the College failed to establish the first element of a free exercise

claim; it did not prove that the zoning laws burdened its exercise of religion. The Court determined that

15

the County's zoning provisions did not absolutely prohibit operation of private or parochial schools because the provisions permitted such a school to be located in either commercial or industrial zones without any special exception. Additionally, with a special exception, such schools could locate within residential zones. The College did not show that conformance to the County's zoning regulations would impair any aspect of its free exercise of religion. "They have not shown how their rights may only be exercised in a facility located in a residential zone, nor that confirming to the special exception requirements laid down by Fairfax would in any constitutionally significant way burden those rights." 1991 WL 179102 at *4.

The Court acknowledged that the County zoning laws made it more difficult for the College to be located on the property of its choice; however

> The fact that local regulations limit the geographical options of a religious school, however, does not prove that any party's right to free exercise is thereby burdened. There must at least be some nexus between the government regulation—here, a zoning law—and impairment of ability to carry out a religious mission. It is not enough that an entity conducting a religious program of mission would prefer to be located on residential property. That preference must be linked to religious imperative. No such limit was proved here and the court was correct in concluding the zoning regulations did not burden appellants' free exercise of religion.

*Id*.

In the case at bar, the Church cannot prove that the Town's zoning laws *substantially burden* their exercise of religion by requiring the owners to either apply themselves for the special use or assign their rights to do so to the tenant. As pointed out hereinabove, the Landowners have not made any effort to comply with the Town's zoning ordinance. Thus, there is no evidence that the Town denied the Church the required zoning classification. In addition, the zoning ordinance allows churches to locate within office/professional areas without following any special procedures. Moreover, the zoning rules authorize churches to operate in mixed use areas after property owners follow appropriate procedures.

16

Therefore, the Church has failed to show a substantial burden on religion with regard to the zoning ordinance.

Furthermore, the Town's zoning ordinance does not prohibit the operation of a church in the Town. The Church has not shown how its rights to freely exercise religion may only be exercised in its current location, nor that conforming to the Town's zoning regulations would in any way burden those rights. There is no nexus between the Town's zoning regulations and the Church's impairment of ability to carry out a religious mission.  Price acknowledged that although the Church was not in compliance with the Town's zoning ordinance, the Town did not prevent members from entering the Church. (Depo. of Price, p. 83). The plaintiffs' position that, under the RLUIPA, a church should be allowed to operate wherever it so chooses, without regard for zoning rules is simply unreasonable and not supported by the statute or by the First Amendment.  Numerous courts have upheld zoning regulations as applied to churches as not creating a substantial burden on religion.  *See, e.g., The Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 406 F. Supp. 2d 507 (D.N.J. 2005); *Williams Island Synagogue, Inc. v. City of Aventura*, 358 F.Supp.2d 1207 (S.D. Fla. 2005); *Civil Liberties for Urban Believers,* 342 F.3d at 760.

Plaintiffs contend that a tenant should be allowed to apply for a conditional use for property. However, it appears to the Court that, allowing a tenant to do so, without the permission of the owner of the property would subject a town to potential liability to the owner under the Fifth Amendment takings clause. Such a policy would also arguably deny other types of tenants equal protection of the laws or violate the Establishment clause of the First Amendment.

In addition, the plaintiffs cannot show that the ordinance herein discriminates against churches, since the conditional use procedure must be followed by other types of entities in the mixed use area, such as day cares, schools, some types of eating establishments, outdoor entertainment, video gambling

17

arcades, indoor recreation and entertainment, banks, and night clubs. (Exhibit 1 to Defendants' Memorandum in Support of Motion for Summary Judgment). Therefore, the Court finds that the plaintiff has not established a *prima facie* case that the zoning ordinance is a substantial burden under RLUIPA.

### 4. Compelling Interest by Town and Least Restrictive Means

Finally, even assuming that the plaintiff has shown a *prima facie* case of substantial burden, the town has shown a "compelling interest" for the zoning ordinance by the "least restrictive means". If a law is found not to be neutral and of general applicability, then it must be justified by a compelling governmental interest and "must be narrowly tailored to advance that interest." *See Vision Church*, 468 F.3d at 996.

Carolyn Montgomery testified in her deposition that "the zoning ordinance was passed through a process of public readings, input from a land planner, input from the planning commission, the town council. . . ." "Montgomery depo., p. 38.

> Q. So you don't know the rationale behind the town's not zoning that area for churches?
> A. I don't think there– I'm not sure. The town simply– it was commercial mixed-use. That was what was agreed on as a part of the whole process. The zoning ordinance that we have is the zoning ordinance that went through the whole process consistent with what the state law required of the comprehensive plan. . ." *Id*.

The land use ordinance provides "it is the intent of the Mixed Use District to encourage development in a flexible manner in areas where transition is imminent but the direction has not yet been manifest, or in areas of sparse residential settlement, but which area would reasonably be expected to begin to mature in the near future."

As noted above, many courts have found compelling reasons for land use regulations, as long as they do not discriminate against churches. Additionally and certainly, the town has a compelling

18

interest in requiring the actual owners of the affected property to be involved in the application process. In the case at bar, the Court finds that the zoning regulation at issue provides for the least restrictive means of achieving the compelling land use interest, that being allowing landowners to apply for a conditional use themselves or assign the right to do so to a tenant. The Court grants summary judgment to the defendants as to the second cause of action.

## Section 1983 Claim for Violation of First Amendment Free Exercise Clause

In order to prevail under Section 1983 under the Free Exercise Clause, plaintiffs must present evidence of "conscious or intentional interference" with their free exercise of religion. *Lovelace*, 2006 WL 3823127 at *18.

Plaintiffs allege numerous incidents of alleged harassment or interference by government agents or police officers at the direction of the defendants. Nevertheless, the defendants argue, and the plaintiffs agree, they have continued to hold worship services and programs and that the town has not padlocked the doors to the church. Analyzing each alleged incident individually and separately, it would appear that the defendants have a valid, plausible explanation for many of the incidents or occurrences that took place. For example, the police officers routinely stopped by, inspected, and entered the premises, even during church services, allegedly due to their knowledge of the noncompliance by the church with the zoning laws and resulting lack of a building permit. However, the cumulative effect of the alleged number of incidents may arguably rise to the level of creating an issue of fact. Additionally, the Court notes the apparent lack of enforcement of the same ordinance while the church was previously located on the mayor's mother's property. (Montgomery depo., p. 78) ("I think that when they were on 31st avenue, I looked the other way for as long as I could. . . ")

Taylor testified:

Q. Were you aware that the church was operating out of that [the first] location?

A. I was.

Q. Do you know how long the church operated out of that location?

A. It was in operation when I moved back home.

Q. So you had no interaction with the church prior to their moving to their second location?

A. None.

Q. But you were aware that the church was in that location?

A. Yes.

Q. Did Ms. Montgomery complain to you that the church should not be in that location?

A. I was aware of the zoning of that location, meaning I was aware that a church was not zoned for that location.  (Taylor depo., pp. 9-10).

This, coupled with the other allegations of the plaintiffs, arguably raises genuine issues of material fact. Viewing the evidence in the light most favorable to the plaintiffs, as required by the standard on motion for summary judgment, the Court finds that there are sufficient factual issues as to whether the defendants intentionally interfered with the plaintiffs' free exercise of religion.[9]

### Potential Liability of Town of Atlantic Beach

Local governments may be sued as persons under Section 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover. . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decisionmaking channels."  *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978).  Under *Monell*, government liability attaches when the alleged injury results from "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. . ." *Id*. at 694.  A single decision by an official with policymaking authority may be attributed to the government itself.

---

[9] As explained earlier, while the plaintiffs do not seek injunctive or declaratory relief, it appears that the zoning ordinance itself (i.e., the land use regulation) does not impose a substantial burden under RLUIPA or under the First Amendment.  However, the evidence of alleged past "conduct"by the defendants (not the zoning ordinance itself) is sufficient to allow the case to proceed on a Section 1983 claim based upon First Amendment interference with free exercise of religion.

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997); *Jones v. Wellham*, 104 F.3d 620, 625 (4th Cir. 1997).

In the case at bar, the plaintiffs have named two defendants (Montgomery, the city manager, and Taylor, the planning director) in their official and individual capacities. The evidence in the case at bar raises issues of fact as to whether any constitutional injury resulted from a governmental policy and whether the decisions by Montgomery and Taylor constituted official policy.

### Qualified Immunity

The defendants also assert that Montgomery and Taylor are entitled to the defense of qualified immunity as a matter of law.  In determining whether qualified immunity is available as a defense, a two-step analysis applies: (1) whether the facts taken in a light most favorable to the plaintiff shows a violation by the individual of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation.  *Lovelace*, 2006 WL 3823127 at *14.  Since the facts in the instant case taken in a light most favorable to the plaintiffs support at least an inference that the defendants acted intentionally in denying plaintiffs their free exercise rights, which were clearly established at the time, the Court refuses to grant Montgomery and Taylor summary judgment on the basis of qualified immunity.

### Question of Who Are Proper Parties Plaintiff

The Complaint initially named only the church and its congregation as parties plaintiff.  The Court, after no response being filed by the defendants, allowed plaintiffs to amend the complaint, and certain individual plaintiffs were named.  However, no allegations are contained in the Amended Complaint as to the individual plaintiffs, even indicating their alleged stake in the lawsuit, much less that they individually suffered damages.  The only plaintiff alleged to have suffered damages is the church.  The Court raises *sua sponte* the issue of whether the church is in fact the only proper party,

as it is according to the amended complaint the only entity which has allegedly suffered damages. The Court notes that allowing both the church and the individual plaintiffs to attempt to recover could amount to double recovery. Therefore, the Court dismisses the individual plaintiffs as parties to this lawsuit. No one has briefed or argued the issue; therefore, the Court would consider an appropriately filed motion to alter or amend should plaintiff's counsel disagree with the Court's analysis of this issue.

### Conclusion

The defendants are accordingly entitled to summary judgment as to the Second Cause of Action dealing with RLUIPA. However, the Court DENIES the motion for summary judgment as to the plaintiffs' First Cause of Action as to the alleged unconstitutional conduct of the defendants under Section 1983 and the First Amendment. The individual plaintiffs are dismissed as parties.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

January 18, 2007
Florence, South Carolina

22